**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| MALIBU MEDIA, LLC, <br><br> Civil Action No. 2:14-cv-03796-WY <br><br> Plaintiff, <br><br> vs. <br><br> JANE DOE subscriber assigned IP address 173.49.211.126, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**MOTION TO QUASH PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE AS MOOT**

### I. INTRODUCTION

This is a copyright infringement case involving the file transfer technology known as BitTorrent. *See, e.g., Patrick Collins, Inc. v. John Does 1-28*, No. 12-cv-13670, 2013 U.S. Dist. LEXIS 11349 (N.D. Mich. Jan. 29, 2013) (provides detailed explanation of BitTorrent file-sharing protocol). The focus of the litigation has been the alleged use of this technology to unlawfully reproduce and distribute via the internet copyrighted motion pictures.

In this case, Malibu Media has identified one Doe defendant, by the internet protocol (IP) address 173.49.211.126, assigned by the Internet service provider Verizon FIOS. Through its current motion, Malibu Media seeks to serve a Rule 45 subpoena prior to the Rule 26(f) conference on Verizon FIOS to uncover the identity of the account holder of this IP address, including name, current and permanent address, telephone numbers and

email addresses.

Defendant seeks to quash Malibu Media's pending motion as moot.

## II. STANDARD OF LAW

Fed.R.Civ.P. 26(d) provides generally that discovery may not begin prior to the Rule 26(f) conference. However, Rule 26(d) also provides that expedited discovery may be conducted prior to that conference when authorized by court order. Consequently, a district court has the discretion to permit discovery prior to a Rule 26(f) conference. *See, e.g., Qwest Communs. Int'l Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). Courts require a showing of good cause in order to authorize expedited discovery. *Tesuco Holdings Ltd. v. Does 1-12*, No. 12-cv-600, 2012 U.S. Dist. LEXIS 178492, *3-4 (E.D. Tenn. December 18, 2012). Good cause may be found based upon "(1) allegations of copyright infringement, (2) the danger that the ISP will not preserve the information sought, (3) the narrow scope of the information sought, and (4) the conclusion that expedited discovery would substantially contribute to moving the case forward." *Best v. Mobile Streams, Inc.*, No. 12-cv-564, 2012 U.S. Dist. LEXIS 170342, *3 (S.D. Ohio November 30, 2012) (citation omitted). Courts also look to whether evidence would be lost or destroyed with time and whether the proposed discovery is narrowly tailored. *Id.*

## III. ARGUMENT

Malibu Media contends that it has demonstrated good cause under the "UMG Recording, Inc v. Doe, 2008 WL 4104214, *4 (N.D. Cal. 2008); and Arista records LLC v. Does 1-19, 551 F. Supp. 2d 1, 6-7 (D.D.C 2008). On this issue, Malibu Media asserts that it has pled a prima facie claim for

copyright infringement, has clearly identified the specific information it seeks through discovery, has no other means for obtaining the Doe defendant's identity, and needs the information to pursue its claim. *Id.*

Malibu Media's motion has been rendered moot on two counts.

### 1. There is No Need to Obtain the Subpoenaed Information.

In support of its application for issuance of the subpoena, Malibu Media explained that use of the BitTorrent software is anonymous except insofar as it requires a user to broadcast an IP address. Malibu Media further attests that it cannot determine the identity and contact information for the Doe defendant without obtaining such information from the ISPs by subpoena. *Id.* p. 6 ("This is all specific information that is in the possession of the Defendant's ISP."); *id.* p. 7 ("Since there is no other way for Plaintiff to obtain Defendant's identity, except by serving a subpoena on Defendant's ISP demanding it, Plaintiff has established the third good cause factor."). Rather than the one-sided discovery Malibu Media seeks, Defendant's appearance vitiates the need for the subpoena prior to the Rule 26(f) conference and places both parties on equal footing in the discovery process. Requiring Defendant to proceed without anonymity at this stage would effectively moot the very relief he seeks and would provide Malibu Media a backdoor route to the information sought through the subpoena issued to Defendant's ISP, without subjecting Malibu Media to discovery. Indeed, it is this scrutiny to discovery that is exactly what Malibu Media hopes to avoid.

As other courts have noted:

The analysis focuses on the period before discovery for two reasons: (1) the Pattern exhibited by [Malibu Media] indicates a lack of intent to litigate these claims, and (2) these claims are not generally expected to go to trial. A clear pattern has been established in these copyright infringement cases: plaintiff files a mass claim under the guise of judicial economy and cost and convenience benefits, issues a third-party subpoena on Internet Service Providers (ISPs) before a Rule 26(f) conference to discover the Does' identities, and then pressures the identified Does to settle privately.

2012 U.S. Dist. LEXIS 89286, [WL] at *5. As the Magistrate Judge noted, "[T]he Court will not automatically hold plaintiff responsible for the alleged abuses of others in its industry." However, the Court may look at *this* plaintiff's pattern of conduct to see whether *it* has abused the joinder process, from which we can infer whether the Plaintiff actually intends to litigate such claims. A brief look reveals that, [6] the Plaintiff has closed numerous joinder claims that it filed within the past year. Of the these claims, every single one was voluntarily dismissed before a Rule 26(f) scheduling conference was even scheduled. And in these cases, settlement, if any, never accounted for all of the Does, meaning there was always a remainder of unresolved Does. Perhaps even more insightful is the Plaintiffs history with claims against individual Does. In a certain district alone, the Plaintiff has closed 12 individual claims that it filed within the past year. Of the 12 individual claims, 5 were settled before a 26(f) conference was scheduled. Of the 7 other cases, 6 were voluntarily dismissed before a 26(f) conference was scheduled and 1 after the conference was scheduled but before it was held.

The fact that all 22 of the Plaintiff's cases within the past year were voluntarily dismissed or otherwise closed before a 26(f) conference raises a very strong inference that this plaintiff in particular does not actually intend to proceed with these claims beyond the pleadings stage. While the Plaintiff may argue that it simply intends to refile individual claims against Does whose identities are uncovered during a joinder [7] claim, a look at the court records dispels this proposition. Of the 225 Does voluntarily dismissed by the Plaintiff from the 11 joined claims (i.e. including the instant case), the Plaintiff has not filed subsequent follow-up individual claims against any one of them. 2 This clearly shows a lack of intent to actually litigate these claims because had the Plaintiff been using the judicial system as a "tool," it would have refiled individual claims against newly identified Does. Even notwithstanding the number of settlements resulting from all of the Plaintiffs joinder claims — 7 out of 280 defendants — one would expect the Plaintiff to have filed individual claims against *some* percentage of newly identified Does, even if those claims do not ultimately proceed to trial. Notwithstanding the voluntary dismissals in the last month, the Plaintiff has not filed individual claims against any Does that were voluntarily dismissed as long as about nine months ago. If the Plaintiff actually intended to litigate these claims, it would have filed individual claims shortly after voluntary dismissal. While it is possible that this use of the judicial system was 100% effective as a "tool" in facilitating [8] private settlements, it is much more likely that the Plaintiff is using the system to achieve settlement of claims that it has no intention of litigating. These types of claims are generally not expected to go to trial. There are 6 possible outcomes for Doe defendants: (1) a Doe's identity is

> undiscoverable for various reasons, (2) an identified Doe cannot be served for various reasons, (3) a culpable Doe settles before trial instead of offering a defense, (4) a culpable Doe argues a defense anyway, (5) an innocent Doe settles before trial despite having a valid defense, or (6) an innocent Doe argues a defense. It is this fifth category –innocent Does who settle before trial despite having a valid defense - that is the reason why the vast majority of cases do not proceed to trial. Even though innocent Does technically have the legal right to choose between settling or arguing a defense, it is a hollow right for all practical [9] purposes. The reality is that many innocent Does settle just to avoid the enormous amount of time and expense associated with these types of cases. *Third Degree Films, Inc. v. John Does 1-72*, No. 12-cv-14106, 2013 U.S. Dist. LEXIS 44131, 2013 WL 1164024, at *7-8 (E.D. Mich. Mar. 18, 2013).

*Malibu Media v. Doe*, No. 12-cv-13312, 2013 U.S. Dist. LEXIS 141384, 5-9 (E.D. Mich. Sept. 30, 2013).

> This Court finds that [Malibu Media's] counsel [Yousef M. Faroniya] has engaged in precisely such abusive activity. Counsel has filed at least twenty-eight other similar actions in the Northern District of Ohio. Expedited discovery has been allowed to proceed in fifteen of those cases. Notably, not a single John Doe defendant has been served in *any* of these actions.5 While discovery has been only recently permitted in some, Plaintiff's counsel had ample time to conduct the requested expedited discovery [15] and serve named defendants in several cases but declined to do so.

*Breaking Glass Pictures v. Does*, No. 13-cv-00804, 2013 U.S. Dist. LEXIS 143839, *14-15 (N.D. Ohio Sept. 3, 2013)

> Moreover, there are signs that [Malibu Media's] counsel [Yousef M. Faroniya] Is engaging in the kind of "litigation abuses" that the *Malibu Media LLC* Decision expressed concerns about, namely that a plaintiff is using the court and the discovery process to "'pick off' individual John Does, for confidential settlements," while not being serious about proving its claims. *Malibu Media, LLC v. Doe*, 902 F. Supp. 2d 690 (E.D. Pa. 2012). Despite the presence of hundreds if not over a thousand Doe defendants in these cases collectively, it

> is curious that Plaintiff's counsel has either been [17] unwilling, unable, or uninterested in identifying and serving a single defendant. At the same time, Plaintiff's counsel has on at least two occasions voluntarily dismissed individual defendants identified only by their John Doe number and corresponding IP address with prejudice. *See, e.g., 13-cv-00465, Voltage Pictures, LLC v. Does 1-43* (ECF No. 8, notice of dismissal of John Doe 21); and, 13-cv-00726, *DMN Films, LLC v. Does 1-34* (ECF No. 6, notice of dismissal of John Doe 9).

*Id.* at *16-17.

If the mere act of having an internet address can link a subscriber to copyright infringement suits, internet subscribers such as this Jane DOE will face untold reputational injury, harassment, and embarrassment. The reputational risk that can be found to be an undue burden is equally presented here: Whether you're guilty or not, you look like a suspect. Id. at 3. Moreover, this case presents the same extortion risk that so concerned Judge's in other circuits.

> Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether Malibu Media has competent evidence to prove its case?

Id. Discovery is not a game. Yet, plaintiffs in these types of cases use discovery to extort settlements from anonymous defendants who wish to avoid the embarrassment of being publicly associated with this type of allegation.

Id. Such abuse of the discovery process cannot be allowed to continue.

## 2. The Defendant's Identity is not Necessary to Proceed with the Litigation.

Further, because Defendant has contacted an attorney and attorney has agreed to accept service, Plaintiff's argument that it could not proceed with this action without discovering his identity is moot. Plaintiff asked for and was given authority to issue a subpoena to Defendant's ISP, for the primary purpose of being able to serve process and proceed with this action. Dkt. No. 2-1 p. 6 ("This is all specific information that is in the possession of the Defendant's ISP that will enable Plaintiff *to serve process on Defendant*."); p. 8 ("Obviously, without learning the Defendant's true identity, Plaintiff will not be able *to serve the Defendant with process and proceed with this case*.").

Now that Defendant's has an attorney, Malibu Media's need for expedited discovery to proceed with this action has ceased. Although the Defendant's *actions* may be relevant to Malibu Media's infringement claims, his *identity* prior to a discovery conference is not. In other words, the Defendant's identity is irrelevant as to whether Malibu Media proceed with this action.

Indeed, as Malibu Media filed suit against the Defendant Doe, it may very well not be him. Malibu Media may be only interested in pursuing the responsible party, but it is clear they have no idea who that may be. As we all know, the subscriber is not necessarily the infringer. There are many scenarios where the infringer is an individual other than the subscriber. Knowing the Defendant's identity prior to a discovery conference will not cause Plaintiff any cognizable harm at this time, and allow both parties an equal opportunity at discovery. *CineTel Films, Inc. v. Doe*, 853 F. Supp. 2d 545, 547 (D. Md. 2012). ("it is a procedural decision allowing these early motions to proceed anonymously when there is little if any harm to the plaintiff").

### 3. The Defendant's Identity may cause Undue Burden.

Jane Doe is a single mother living with 2 young daughters. Having her name, address, email address and telephone number made public runs risks of undue burden. What legitimate safety requirements are in place for a single mother and her daughters if people know they live alone, and these young girls are home by themselves while the mother works? Are there crime prevention measures? Having the public know that a woman and daughters live alone and her daughters are often home alone can and will cause undue burden.

## IV. CONCLUSION

For the reasons stated above, and given the current state of the record in this case, Malibu Media's motion for leave to serve Third party Subpeona Prior To A Rule 26(f) Conference should be denied.

Dated: August 29, 2014

Jane Doe
6407 Morris Park Rd
Philadelphia, Pa 19151

Christopher Fiore
Fiore & Barber
418 Main Street
Harleysville, PA 19438
T: 215.256.0205
F: 215.256.9205
cfiore@fiorebarber.com